UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

JULIA SERPICO

                               Plaintiff,                          **Docket No.:**

          -against-

COUNTY OF NASSAU, DETECTIVE THOMAS S.       **COMPLAINT**
DUNBAR, DETECTIVE NICOLE M. CLEMENTSON,
SERGEANT HAROLD J. HORCH, OFFICER BRIAN     **JURY TRIAL**
J. COLEMAN, OFFICER MICHAEL BRACCO,        **DEMANDED**
NASSAU COUNTY POLICE DEPARTMENT
JOHN AND JANE DOES 1-5, AND CHRISTINA AND
JOSEPH LOWETT,

                             Defendants.

-------------------------------------------------------------------------X

      Plaintiff, JULIA SERPICO, by and through her attorneys THE LAW OFFICE OF
ANTHONY M. GRANDINETTE, states as follows:

## INTRODUCTORY STATEMENTS

1.    This is an action for damages sustained by Julia Serpico, a resident of the United States
against the above-named defendants for various State and Federal constitutional and civil
rights violations, and New York State common law torts, including, but not limited to
false arrest, false imprisonment, malicious prosecution, unlawful detention, respondent
superior, resulting in the depravation of her constitutional rights.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, and
Fourteenth Amendments to the United States Constitution, due process, and the
Constitution and laws of the State of New York.

3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 2202.

4.    Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate pendant
state law claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff, JULIA SERPICO ("Julia Serpico"), is a resident of Nassau County.

7. Defendant, COUNTY OF NASSAU, ("Nassau County") is a county within the State of New York and the public employer of the Nassau County Police Department, Detectives Thomas S. Dunbar and Nicole M. Clementson, Sergeant Harold J. Horch, Officer Brian J. Coleman and Michael Bracco and Police Officers John and Jane Does 1-10 named as defendants in this action.

8. The NASSAU COUNTY POLICE DEPARTMENT is a County agency, organized under and existing and operating by virtue of the laws of the State of New York and the County of Nassau.

9. Defendant, DETECTIVE THOMAS S. DUNBAR, (hereinafter "Det. Dunbar") was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of his employment and/or in his individual capacity. Det. Dunbar is being sued in his official and individual capacities.

10. Defendant, DETECTIVE NICOLE M. CLEMENTSON, (hereinafter "Det. Clementson") was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of her employment and/or in her individual capacity. Det. Clementson is being sued in her official and individual capacities.

11. Defendant, SERGEANT HAROLD J. HORCH, (hereinafter "Sgt. Horch") was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of his employment and/or in his individual capacity. Sgt. Horch is being sued in his official and individual capacities.

12. Defendant, OFFICER BRIAN J. COLEMAN, (hereinafter "Officer Coleman") was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of his employment and/or in his individual capacity. Officer Coleman is being sued in his official and individual capacities.

13. Defendant OFFICER MICHAEL BRACCO (hereinafter "Officer Bracco") was at all relevant times an employee of Defendants Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of his employment and/or in his individual capacity. Officer Coleman is being sued in his official and individual capacities.

2

14. Defendants, NASSAU COUNTY POLICE DEPARTMENT JOHN AND JANE DOES 1-5, ("John Doe[s]") include but are not limited to police officers, detectives, sergeants, and lieutenants, captains, whether on or off duty, whose identities are not yet known to Plaintiff at this time but are known to Defendants Nassau County and Nassau County Police Department. Plaintiff intends to name the individual John and Jane Does after learning their identities. Defendants John Does were at all relevant times employees of Defendant Nassau County and Nassau County Police Department, and at all relevant times acted under color of state law and within the scope of their employment and/or in their individual capacity. Defendant John Does are being sued in their official and individual capacities.

15. Defendant, CHRISTINA LOWETT, is a private citizen who at all relevant times herein was a resident of Nassau County, with a physical address of 3673 Somerset Drive, Seaford, New York.

16. Defendant, JOSEPH LOWETT, is a private citizen who at all relevant times herein was a resident of Nassau County, with a physical address of 3673 Somerset Drive, Seaford, New York.

## NOTICE OF CLAIM

17. Plaintiff filed a timely Notice of Claim against the County of Nassau (and Nassau County Police Department), on October 30, 2020, in compliance with General Municipal Law § 50. Exhibit A.

18. At least thirty days have elapsed since the service of said Notice of Claim and Nassau County and Nassau County Police Department have neglected or refused to adjust or pay the claims.

19. Plaintiff was examined pursuant to GML § 50-h prior to commencing this action.

20. This action has been commenced within one year and ninety days after the happening of the events upon which these claims arise.

## FACTUAL AND GENERAL ALLEGATIONS

21. Wednesday, April 22, 2020, was Julia Serpico's 23rd birthday. On Friday, April 24, 2020, Julia Serpico had plans to celebrate her birthday with her family.

22. On Friday April 24, 2020, at approximately 5:55 pm, Julia Serpico, age 23, and her younger sister Emily, age 17, exited Julia's home located at 3675 Somerset Drive,

Seaford, New York, 11783, with the intent to drive to their father, Michael Serpico's home, located just five houses down the block at 3638 Somerset Drive, to enjoy her birthday dinner with family.

23. After exiting the front door of her home, Julia Serpico entered the driver's side of her gray Subaru four-door sedan bearing New York registration GRC-4084, while her sister, Emily, simultaneously entered the passenger side of the car which was parked in the driveway. Julia backed her car up onto Somerset Drive, proceeded west bound five houses to her father's home and then parked in his driveway. Because it was daylight, Julia Serpico's car was clearly visible for all to see.

24. At this same time, neighbor Charlie Spoto, was driving east bound on Somerset Drive and pulled over after Julia Serpico backed out of her driveway, to allow her to proceeded west bound. Charlie Spoto did not witness anything unusual when Julia drove down the street.

25. Christina and Joseph Lowett are the immediate neighbor to the west of Julia Serpico with a physical address of 3673 Somerset Drive, Seaford, New York. To the immediate west of the Lowett's home is a vacant lot, which the Lowett's routinely use to park their vehicles. The Lowett's have two young children, approximately 5 and 8 years of age.

26. As Julia Serpico began to drive down Somerset Drive to her father's home, Christina, and Joseph Lowett and their two children had recently exited their white Dodge Ram pickup truck. Christina Lowett and her son, Joseph, were walking in the vacant lot heading toward the street as Julia Serpico drove by her home.

27. At no time were any of the Lowetts physically in the street when Julia Serpico drove her car passed the Lowett family west bound on Somerset Drive.

28. As Julia Serpico drove by the Lowett family, Christina Lowett and her son Joseph were clearly visible on her right, and none of the Lowetts were physically in the street. Based upon their physical location, the Lowetts were a significant distance from Julia Serpico's vehicle which never posed a legitimate risk of physically striking any of the Lowett family members.

29. In fact, at the time Julia Serpico passed the vacant lot, Christina Lowett's son, Joseph, was approximately 13 feet or more from Julia Serpico's automobile, standing in the vacant lot approximately 3 feet from the curb line. Christina Lowett was approximately 11 feet from Julia's car, also standing in the vacant lot approximately 2 feet from the curb line. Christina Lowett waived at Julia and her sister as they drove past.

30. The events of Julie Serpico driving past the Lowett family, described in paragraph's 21-29, were recorded on surveillance video. Exhibit B, Video surveillance footage and

Exhibit C, still photographs taken from Exhibit B. At the time Julia drove by the Lowett family it was 5:51 pm, it was light out and the visibility was excellent.

31. As intended, Julia Serpico pulled into her father's driveway, at 3638 Somerset Drive, had dinner and remained at her dad's home socializing until approximately 9 pm. During that time frame, approximately 5:45-9 pm, Julia's gray Subaru four-door sedan bearing NY registration GRC-4084, was clearly visible from the roadway and from the Lowett's home at 3673 Somerset Drive. The distance between the two homes is approximately 220 feet.

32. Unbeknownst to Julia Serpico, Christina and or Joseph Lowett made a 911 call to police at 5:56 pm, claiming that Julia Serpico had tried to hit their 8-year-old son Joseph with her car and then sped off. The caller also told the 911 operator that they (the Lowett family) were having ongoing issues with their neighbor, referring to Julia Serpico. In reality, Julia Serpico had not attempted to strike their 8-year-old child nor sped off, but simply had driven five houses down the block where she parked in her father's driveway and remained for three hours and fifteen minutes. Exhibit D, Event chronology printout.

33. In response to the Lowett's 911 call, Officers Bracco, Coleman and Sgt. Horch responded to the Lowett's home for a "10-80, neighbor dispute" to 3673 Somerset Drive in radio motor patrol cars 701, 710, 717 (herein after "RMP". RMP 745 and others may also have responded. Exhibit D Event chronology printout and Exhibit E, Memo books entries of Officer Bracco and Sgt. Horch dated April 24, 2020.

34. According to the event chronology printouts, RMP units 710 and 717 arrived at the Lowett's home at 1757 (5:57 PM), and broadcast via radio at 1758 (5:58 PM), that "Neighbor (referring to Julia Serpico), is not at scene". Based upon information and belief Officer Bracco was assigned to car 701 and Sgt. Horch was assigned to RMP 745. As referenced in paragraph 29, Julia Serpico's vehicle was parked just 220 feet from the Lowett's home at the end of her father's driveway and easily visible from the Lowett's property on Somerset Drive.

35. According to Sgt. Horch's memo book, he arrived at 3673 Somerset Drive at 1850 (6:50 pm), for a "10-80 neighbor dispute" and departed at 1900 (7:00pm). Exhibit E.

36. At no time did the Lowetts, or any Nassau Police defendants while at the scene, make any effort to speak with Julia or Emily Serpico, despite their immediate presence at their father's home located just five houses away (approximately 220 feet), from the Lowett's home at 3673 Somerset Drive.

37. Notwithstanding that fact, at 1850 hours Officer Coleman, wrote out the supporting deposition of Christina Lowett, which states the following:

5

I was in front of my home located at 3673 Somerset Drive, Seaford with my son, Joseph Lowett, (5/18/2011) who was playing by the street. While my son, Joseph, was playing, my next-door neighbor, Julia Serpico, who lives at 3675 Somerset Dr., Seaford pulled out of her driveway in a black two-door sedan Subaru at a high rate of speed and purposely swerved her vehicle to the right towards my son, putting my son in physical harm. While she was swerving towards him, she was honking the horn and her friend in the passenger seat was giving me the middle finger. I thought she was going to kill my son. I did not give anyone permission to threaten physical harm towards my son, Joseph Lowett, and to put him in fear of physical harm. *I'm requesting that Julia Serpico be arrested for menacing.* Officer Coleman is writing this statement for me, I have read it and it is the truth. Exhibit F, *emphasis added.*

38.  New York Penal Law § 120.15 defines Menacing in the third degree as follows: "A person is guilty of menacing in the third degree when, by physical menace, he or she *intentionally* places or attempts to place another person in fear of death, imminent serious physical injury, or physical injury." *Emphasis added.*

39.  However, a menacing charge was never filed against Julia Serpico. Detective Dunbar would later explain to Assistant District Attorney Sean Carberry, of the Nassau County District Attorney's ECAB unit, some of the reasons Serpico was not arrested for menacing. Some, but not all, of those factual reasons which negated probable cause for a menacing arrest were reduced to writing : 1) An ongoing dispute existed between the victim (Lowett) and the defendant (Serpico)[1]; 2) By way of example, the victim had called the 7th Precinct on the defendant's birthday because the defendant and her family were in their backyard and it was "getting late"; 3) Detective Dunbar advised ADA Carberry that Julia Serpico's animosity was aimed at the mother (Christina Lowett) not the child;[2] 4) Dunbar believed the mother (Christina Lowett) was "blowing [the] incident out of proportion given the disputes between the mother (Christina Lowett) and defendant";[3] 5) Dunbar was not charging Julia Serpico with menacing, because he did not believe that Julia Serpico had the requisite intent to sustain that charge given the ongoing feud between the victim and Julia Serpico.[4]

40.  The same factual reasons articulated by Det. Dunbar that negated probable cause to arrest Julia Serpico for menacing also negated the probable cause for the two crimes the

---

[1] Thereby confirming the claims of the Serpico family concerning the history of false allegations, disputes, and harassment by the Lowetts against Julia and acknowledging Christina Lowett's motive to lie about the events.

[2] Detective Dunbar understood that Julia Serpico lacked any motive to scare or harm 8-year-old Joseph Lowett.

[3] In other words, Detective Dunbar did not find Christina Lowett credible concerning her allegation that Serpico "purposely swerved her car" at Lowett's son.

[4] Detective Dunbar knew that Serpico lacked the intent to frighten or injure the Lowett child.

6

Defendants eventually arrested and charged Julia Serpico with- Endangering Welfare Of A Child: Injurious: 17 Years Of Age and Reckless Endangerment 2nd degree. Exhibit G, Criminal Information.

41. After Officers Coleman, Bracco and Sgt. Horch responded to the scene, discussed the allegations with the Lowetts and secured the supporting deposition of Christina Lowett, the case was assigned to Detectives Dunbar and Clementson.

42. After the assignment of the case to Detectives Dunbar and Clementson, Officers Coleman, Bracco and Sgt. Horch communicated what they learned from conversations with the Lowett family to Detectives Dunbar and Clementson, including the fact that the Lowetts had ongoing issues with Julia Serpico and had called police on multiple occasions in the past without police action being taken.

43. After their assignment to the case, but prior to speaking to Julia Serpico, Detectives Dunbar and Clementson re-interviewed Christina and Joseph Lowett. During that interview Det. Dunbar questioned the Lowetts concerning the ongoing dispute between the Lowetts and Julia Serpico, and found the Lowetts to lack credibility concerning the alleged factual events of April 24, 2020, accusing Julia Serpico of intentionally swerving her car at their 8-year-old. After the interview, Detectives Dunbar and Clementson concluded, amongst other facts, that Christina and Joseph Lowett had made meritless complaints about Julia Serpico in the past, and that the Lowetts possessed a motive to make further false allegations against Julia Serpico. The detectives also concluded that Julia Serpico had no animosity toward the Lowett children, and therefore, no motive to want to harm or scare them.

44. At approximately 9 pm, after enjoying her birthday cake, Julia and Emily Serpico left their father's home and drove back to Julia's house. Once there, Julia cleaned the kitchen floor while Emily showered, and then the girls put on their pajamas and selected a movie from NETFLIX to settle in for the evening.

45. At approximately 10:45, the girls got back into Julia Serpico's car and headed to the local 7-11 for snacks. The girls were back at the house at approximately 11 pm.

46. After pulling into her driveway, Julia noticed a car pull up and park directly in front of her driveway--intentionally blocking access to the roadway. Julia told Emily to wait in the car as she exited to inquire of the unknown motorist.

47. At the same time, Detectives Dunbar and Clementson exited their vehicle.

48. Det. Dunbar walked up the driveway to Julia and stated, "Jessica, you are under arrest." To which Julia relied, "[m]y name is not Jessica. I think you have the wrong person."

49. Det. Dunbar returned to his car, looked at some paperwork and then stated, "I need Julia." Julia relied, "I am Julia." Detective Dunbar then advised Julia that "she was under arrest" and that he needed to impound her car. Julia Serpico responded, "why am I under arrest, for what?" "Impound my car? What did I do?" Julia turned to her sister Emily and said, "I have no idea what's going on Emily, please call Dad right now!"

50. Emily called her father, Michael Serpico. Michael Serpico and his girlfriend immediately responded to his daughter's home.

51. Realizing that Julia Serpico was dumbfounded by why she would be the subject of an arrest and her car impounded, Detective Dunbar explained to Julia that "your neighbor claims you were involved in an incident with her earlier today—lets go inside and talk."

52. In response, Julia Serpico immediately denied that any incident occurred earlier that day between her and her neighbor— "that's not true, there was no incident with my neighbor today!"

53. Present in Julia Serpico's home were Julia, Emily and Michael Serpico, and Michael's girlfriend, Janine Colasanti, and Detectives Dunbar and Clementson.

54. Once inside, Det. Dunbar tells the parties, in sum and substance, that Christina Lowett reported to police that while her 8-year-old son, Joseph Lowett, was playing near the street in front of her home, when she observed Julia Serpico back out of her driveway, proceed down Somerset Drive at an excessive rate of speed and intentionally swerve her car toward her son, Joseph, placing him in physical harm. Simultaneously, according to Christina Lowett, Julia honked her horn[5] as Emily flipped Christina Lowett the middle finger. According to the supporting deposition of Christina Lowett, she requested the Defendants arrest Julia Serpico for menacing.

55. In sum and substance, the following facts were communicated to Detectives Dunbar and Clementson, by Julia, Emily and Michael Serpico, and Janine Colasanti while inside Julia Serpico's home prior to her actual arrest:1) The Lowetts and Julia Serpico had a history of ongoing disputes; 2) That Christina and Joseph Lowett had made numerous false complaints to police about Julie Serpico in the past, all of which the police investigated, were found to be unsubstantiated, and therefore, no police action was taken; 3) This current complaint was completely untrue which was easily verifiable with virtually no effort; 4) That Emily Serpico was the front seat passenger in Julia's car when she drove past the Lowett's home earlier that evening, and therefore, was an eye-

---

[5] Presumably, the alleged intent for Julia Serpico blowing her horn was not to alert Christina Lowett or her son she was driving down the street, or to return Christina Lowett's neighborly wave, but preposterously, for the proposition that Julia was trying to get Christina Lowett's attention prior to running down her 8-year-old son.

witness; 5) Emily communicated that she and her sister saw the Lowetts, but that her sister never swerved the car at their child, that their car never came close to any of the Lowett family members, that Emily never gave Christina Lowett the middle finger, but rather, the sisters simply drove down the block and parked in her father's driveway with the intent to celebrate Julia's birthday over dinner with family[6]; 6) Julia corroborated her younger sister's account to Detectives Dunbar and Clementson stating that nothing happened between her and the Lowetts that day, she drove to her Dad's home for birthday dinner, and that any claim that Julia swerved her car at one of the Lowetts children was ridiculous and a bald face lie; 7) Julia Serpico told Detectives Dunbar and Clementson, that the allegations against her were completely false and that " [w]e saw them, but I would *NEVER* swerve my car toward a child."[7](emphasis added); Julia explained the physical distance between her car to the location of Christina and Joseph Lowett and the fact that there were cars parked on the side of the road making these claims factually impossible; 8) Julia, her sister, father and his girlfriend told the Detectives what Christina Lowett was saying made no sense, that Julia Serpico, on the way to have dinner with her father, a mere five houses down the block, intentionally swerved her car to hit an 8-year-old for no reason at all, missed him, then parked and had a casual birthday dinner; that if those facts were true the Lowett's would have immediately walked down the street to confront Julia; 9) That police never came down the street to interview Julia or Emily, despite their immediate presence for hours post events; 10) The police are aware, from prior investigations in their neighborhood, that multiple homes on Somerset Drive, in the exactly location where the Lowetts' claim this crime happened, have video cameras which would have captured these events on film unequivocally establishing Julia's innocence; 11) That Detectives Dunbar and Clementson knew where Julia lived, that she had no criminal history and posed absolutely no flight risk; 12) That if Detectives Dunbar and Clementson simply waited until the morning to view the video evidence from homes in the neighborhood, it would establish that no crime occurred; 13) After Detectives refused to take the brief amount of time necessary to view the video evidence, which Detectives Dunbar and Clementson knew, or should have known existed prior to arresting Julia Serpico, Michael Serpico physically pointed to the cameras on the homes that would have captured the events. Michael Serpico told Detectives Dunbar and Clementson he would wake up his neighbors "right now" to prove his daughter did not swerve her car at Joseph Lowett;[8] 14) Michael Serpico offered to show the Detectives his own ring video to confirm that his daughters and his girlfriend were at his house celebrating Julia's birthday from 5:45 - 9 pm, only a few houses from the alleged occurrence; 16) If such an event did happen the police should have walked over and knocked on the door to speak to Julia and Emily.

---

[6] Detectives Dunbar and Clementson refused to take a sworn statement from Emily despite being asked to do so.

[7] This quotation was referenced in the arrest paperwork as an admission by Julia Serpico against her penal interest, forwarded to prosecutors, who then served it on defense counsel at arraignment under CPL 710.30. Presumably, the theory behind the "admission" against penal interest was that Julia Serpico admitted driving down the street and seeing her neighbors. However, no reasonable police officer could interpret this statement other than an unequivocal denial of the allegations against her.

[8] During this exchange between Michael Serpico and Det. Dunbar, when Mr. Serpico challenged Dunbar for doing nothing other than speaking to the Lowetts, Dunbar told Michael Serpico he was not taking any "fucking orders" and threatened to arrest Michael Serpico as well as his daughter if he kept talking.

56. Det. Dunbar and Clementson failed to forward the majority of the Brady material outlined in paragraph 55 to the attention of prosecutors. Det. Dunbar and Clementson were aware that this Brady material was readily available to them, e.g., eyewitness statements from Emily Serpico negating Julia Serpico swerved at Joseph Lowett, the existence of surveillance video, the eyewitness account of Michal Serpico and Janine Colasanti refuting the claim that Julie Serpico fled the scene after committing the crime and was present 5 houses down the block for 3 ½ hours after the incident negating the inference of guilt by flight from the probable cause calculus. All of these Brady materials negated even arguable probably cause and were intentionally withheld from the prosecution resulting in Constitutional harms to plaintiff.

57. After discussing the case with Julia, Emily Michael Serpico and Janine Colasanti Detectives Dunbar and Clementson knew that Christina and Joseph Lowett were not credible, and they lacked probable cause to arrest Julia Serpico. Notwithstanding any of the foregoing, in response, Detectives Dunbar and Clementson arrested Julia Serpico and told the parties that it was not their job to investigate. "Their," referring to himself and Det. Clementson.

58. Dunbar bluntly told Michael and Julia Serpico that they could (referring to the Plaintiff and her father), look into the possibility of video evidence if they desired, but it was not Det. Dunbar or Det. Clementson's job to do so. Dunbar went on to advise the Serpicos that if they or their lawyer find any video evidence, submit it to him or the District Attorney. Dunbar also stated that if the video confirmed the Serpico's account was false, he would personally arrest Christina and Joseph Lowett for perjury.

59. When asked for her name, Det. Clementson refused to provide her name and shield number in direct violation of the NCPD rules and procedures. Det. Clementson was clearly embarrassed by what was happening, acknowledging the validity of Julia Serpico's position. In direct response to the request for her name and shield number she stated, "I don't have to give you my name, don't look at me—this is all on him" (referring to Detective Dunbar), "I have nothing to do with this arrest." "I want nothing to do with this."

60. Det. Clementson failed to intercede in this matter, where a duty to intercede existed, pursuant to her training and the rules and procedures of the Department. Det. Clementson was aware a constitutional violation was being committed by Det. Dunbar, yet she failed to intervene thereby allowing the false arrest to occur resulting in multiple, well recognized, constitutional harms to Plaintiff.

61. In addition to the foregoing, The Defendants also ignored the physical evidence present at the scene rendering the allegations virtually impossible to have occurred as claimed by the complainant. By way of example, a car was parked on the curb adjacent to the claimed location where Joseph Lowett and Christina Lowett were allegedly standing when Officers Bracco, Coleman and Sgt. Horch responded to Lowett's home (see

paragraphs 32-35 supra). The presence of the vehicle along the curb line would have made it physically impossible, and/or highly improbable, that Julia Serpico could have physically swerved her car at a high rate of speed toward the curb line (the alleged location of the child), without colliding with the passenger car parked on Somerset Drive. These facts were so apparent that to disregard them would constitute an intentional avoidance and/or gross negligence. The evidence was so clear that it is hard to imagine any reasonable police officer, nevertheless two officers and their experienced Sergeant, could have possibly missed these facts.

62. Julia Serpico was escorted to her bedroom by Det. Clementson and ordered to change her clothes. Julia requested that Clementson turn around while she changed her clothing because she was in her pajamas and had no undergarments on, however, Det. Clementson declined to do so. As a result, Julia was forced to strip naked in front of Det. Clementson to her embarrassment and humiliation.

63. Julia was told to leave her phone and all other personal belongings in the house, was placed in handcuffs, confined against her will, was conscious of that confinement, and was forced to do the perp walk to the police car in view of her neighbors.

64. While on the way to the precinct and at the precinct Julia once again explained to the Detectives. Dunbar and Clementson that the Lowetts continuously lie to the police about her behavior and that she had formally complained to the 7th Precinct about the Lowetts harassing her via these false complaints. Julia explained to Det. Dunbar and Det. Clementson that when she asked to have the Lowetts arrested for harassing her via these false complaints, she was told, while standing inside the 7th Precinct, that even though the police realized the complaints were not valid, that they were powerless to do anything about it, because it was "a neighborly dispute".

65. Julia specifically asked Det. Dunbar and Det. Clementson to pull the complaints to verify the veracity of Julia's claims. Julia also explained to Det. Dunbar and Det. Clementson that the Lowetts were lying about her behavior, yet again, (driving her car toward a young child), and that if they would not take the time to get the video, they could at least pull all of the prior false complaints.

66. Plaintiff was taken to the 7th Precinct station house, was walked up to the second-floor squad room and then placed in a cell. Her right wrist was then handcuffed to a bar underneath the bench within the holding cell. The manner in which she was constrained was painful and uncomfortable. Julia politely requested that the Detectives Dunbar and Clementson adjust her handcuff, however, her complaints were ignored by Defendants. Exhibit H, Photo of Plaintiff's wrist.

67. Plaintiff remained at the 7th precinct for hours while Detectives Dunbar and Clementson processed her arrest, including but not limited to preparation of arrest reports, crime reports, criminal information, desk appearance tickets, fingerprints and booking

photographs, conversations with the Nassau District Attorney's ECAB unit, etc. During this time frame, Plaintiff was confined against her will. Plaintiff was conscious of her confinement and did not consent to same.

68. During this process, Julia politely explained to Detectives Dunbar and Clementson that she was extremely claustrophobic, that her chest was tightening up and that she needed to be removed from the cell or taken to the hospital. Det. Dunbar and Det. Clementson ignored Julia's initial complaints, however, after approximately one-half hour removed her from the cell and cuffed her to a desk. Det. Dunbar and Det. Clementson both violated Nassau County Police Department policy and procedure by ignoring Julia's request for medical attention and to be brought to the hospital.

69. After cuffing Julia to the desk, Det. Dunbar and Det. Clementson observed Julia's right wrist bleeding from the handcuff she was complaining about after being handcuffed in the holding cell.

70. Julia politely requested a Band-Aid to place on her cut which was bleeding. In response, Det. Dunbar placed a band aid on the desk, but offered no assistance to apply the Band-Aid leaving Julia in an awkward position trying to apply the Band-Aid while her right wrist (dominant hand) was handcuffed to the desk. Detectives Dunbar and Clementson violated Nassau County Police Department policy and procedure by failing to provide first aid or summons assistance for same.

71. Throughout the evening, Julia continued to ask Detectives Dunbar and Clementson to please get the video, pull the prior false complaints of the Lowetts against her, take a statement from her sister. etc, pleading that they investigate further prior to arresting her. Notwithstanding, Det. Dunbar and Det. Clementson refused to do what a reasonable officer would have done under the existing circumstances and simply checked the video surveillance of the neighbor's home.

72. Frustrated, Julia posed the following hypothetical to the Detectives, so if I sign a statement tomorrow saying Joseph Lowett raped me, you would not investigate, you would just arrest him for rape? To which Det. Dunbar responded, "shut up, I am sick of your childish behavior."

73. The Defendants completed the arrest paperwork and forwarded it to the Nassau County District Attorney's Office for the purpose of prosecuting Julia Serpico.

74. The charging instrument alleged two specific criminal counts: PL §260.10(1) Endangering the Welfare of a Child: Injurious: 17 YOA and PL§120.20 Reckless Endangerment 2nd degree. Exhibit G, Criminal Information's. Both counts are class A misdemeanors punishable by up to a 364-day jail sentence and 3 years' probation.

75. NY Penal Law defines §260.10(1) Endangering Welfare of a child: Injurious: 17 YOA as follows:

> "A person is guilty of endangering the welfare of a child when: 1. He **knowingly** acts in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health." *Emphasis added.*

76. NY Penal Law defines §120.20 Reckless Endangerment in the second degree as follows:

> A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person. Reckless endangerment in the second degree is a class A misdemeanor.

77. NY Penal Law §15.05(3) defines Recklessly as follows:

> "A person acts recklessly with respect to a result or to a circumstance described by a statue defining an offense when he is **aware of** and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto."

78. The information was signed by Defendants Det. Dunbar and Sgt. Horch.

79. The basis of the probable cause as stated in the criminal information is explained as follows:

> "The above is based on information and belief. The basis of information and belief being the signed sworn deposition of the parent of juvenile victim, the oral statement made by the defendant to your deponent, "We saw them, but I would never swerve my car toward a child." And the police investigation." Exhibit G.

80. Accordingly, the probable cause for Julia Serpico's arrest is not limited to the sworn statement of the complainant, Christina Lowett, but is also based upon the exculpatory statement of Julia Serpico, that she did not commit the crime, and the "police investigation."

81. The police failed to conduct an adequate investigation prior to the arrest of Julia Serpico. Based upon the existing circumstances at that time of Julia's arrest, no reasonable officer in Detectives Dunbar, Clementson, and Sgt. Horch position would have failed to conduct further inquiry prior to arresting plaintiff. Failure to make further inquiry when a reasonable person would have done so constitutes a lack of probable cause in this case.

82. The defendants forwarded false and misleading documents, statements and information to prosecutors knowing they would rely on the information in the prosecution of Julia Serpico. The defendants withheld exculpatory information from prosecutors they knew negated probable cause.

83. Plaintiff was issued two appearance tickets directing her to appear in Court on May 15, 2020. The defendant was directed to appear in Court under threat of a bench warrant being issued for her arrest and the case proceeding in her absence. Exhibit I desk appearance tickets. At the time Defendants initiated the prosecution against Julia Serpico they lacked probable cause.

84. In fear of additional false allegations being raised by the Lowetts, coupled with the refusal of the police to investigate, or listen to Plaintiff and/or her witnesses, Plaintiff was constructively evicted from her home. She had justifiable apprehension that Defendants Christina and/or Joseph Lowett would file additional false allegations against her, and that the Defendants would arrest her irrespective of the validity of the allegations.

85. Based upon her experience, Julia Serpico had no confidence she would receive police protection from the defendants as would an average citizen in the community.

86. Historically, over the course of two years, Julia had been the subject of approximately 10-15 noise complaints filed by the Lowetts. After approximately 7 or 8 such complaints, Julia responded to the 7th Precinct and requested to file harassment charges against the police who responded to her home and the Lowetts for harassment. Julia spoke with an unknown officer at the front desk. In sum and substance, Julia explained to the officer that her neighbors continually call making false allegations against her for noise violations. Julia explained that on multiple occasions when police arrived, she was in her home quietly watching television, and that the officers were aware of that and left.

87. On each occasion, Julia explained that the officers were apologetic that they had to disturb Julia.

88. Julia specifically asked the officer, to pull the complaints to verify what she was stating was truthful. Julia also explained that the police presence at her home on a monthly basis was embarrassing and constituted harassment. Julia expressed complete dismay and anger that nothing could be done.

89. Accordingly, Julia Serpico did not return to her home for three and a half weeks pending the installation of a home security system and automobile dash cam that would act as a safeguard from fraudulent allegations against her.

90. Adding to the Serpico's concern was Lowetts bragging about their connections with the Nassau County Police Department. The Lowetts threatened Julia and Michael Serpico that they would have Julia arrested based upon "our connections with the Nassau County Police Department," stating, "you have no idea who you're dealing with." The referenced connections with the Nassau County Police Department, was the marriage of the Joseph Lowett's mother, Christina Farrell Napolitano, to Captain Napolitano of the NCPD. Christina Farrell Napolitano was a former NCPD Detective.

91. Based upon information and belief, the complainants' contacted the Napolitanos on the date of incident and secured their influence with respect to this arrest. The County is placed on notice that if these allegations are confirmed the Plaintiff may pursue claims against Captain Napolitano and retired Detective Christina Farrell Lowett.

92. Over the next few days, Mr. Serpico obtained the video from the cameras of his neighbor's homes which he and his daughter had requested Detectives Dunbar and Clementson to retrieve. That video evidence completely exonerated Julia Serpico of all charges. See Exhibit B.

93. Mr. Serpico forwarded that video evidence to Detective Dunbar within 48 hours of his daughter's arrest.

94. Julia Serpico's attorney forwarded the video to the assigned Assistant District Attorney. On August 3, 2020, the matter was favorably terminated pursuant to CPL § 170.30(1)(f), in light of the fact that the video evidence completely exonerated Julia Serpico of all charges. Exhibit J.

95. Notwithstanding the corroboration of the factual account Julia, Emily and Michael Serpico provided Detectives Dunbar and Clementson, the criminal charges remained in effect for over 6 months, significantly restricting Julia Serpico's liberty and causing her significant and protracted anxiety.

96. Due to Defendants' actions, Julia Serpico was falsely arrested and charged with criminal activity, falsely imprisoned, maliciously prosecuted, and her right to due process and a fair trial, right to liberty, amongst others, were violated.

97. Julia Serpico suffered, and continues to suffer, from severe emotional distress and anxiety, humiliation, and permanent damage to personal reputation.

98. Julia Serpico incurred monetary costs due to her false arrest and malicious prosecution including costs for a security system ($1,600) and monthly monitoring, dash cam ($150.00) legal fees ($12,500.00 to date), investigative fees in the amount yet to be determined, and additional costs associated with her prosecution.

99. Julia Serpico's reputation has been permanently damaged. She now has an arrest record,

where she previously had none.

100. Following the dismissal of her charges, Julia filed a formal complaint, through counsel, with the Nassau County District Attorney's Office, Complaint No. 990594-20, against the Defendant Lowetts, for filing a false complaint. Exhibit k. This was necessary because Det. Dunbar never arrested and charged either Joseph or Christina Lowett as he promised he would if provided with video evidence that their claims were untrue.

101. Shockingly, despite the historical facts of this case, the District Attorney's Office forwarded Julia Serpico's complaint to the 7th squad, the same individuals who ignored Julia Serpico's prior complaints against the Lowitts. Exhibit K, Letter dated September 17, 2020, by Deputy Bureau Chief Warren N. Thurer, referring Plaintiff's complaint to the 7th squad.

102. Not surprisingly, no action was taken against the Lowetts, despite the video evidence[9] clearly establishing the contents of the 911 call by Joseph Lovett to the NCPD and the signed deposition of Christina Lowett, under penalty of perjury, were unequivocally false.

103. As outlined above, Defendant Joseph Lowett acted with malice, particularly when he called 911 and intentionally lied to police concerning the factual events of Friday, April 24, 2020, as well as his follow-up interviews with responding defendant officers.

104. When Joseph Lowett gave a false account of Julia Serpico swerving her automobile at his son, he knew those allegations were false, yet he made them anyway. Joseph Lowett did so with the intent to have Julia Serpico falsely arrested and maliciously prosecuted. Plaintiff was thereafter seized, and her personal liberty and privacy was infringed upon. Thereafter, Defendant Joseph Lowett continued to act with malice when he intentionally lied to prosecutors assigned to the criminal prosecution concerning the underlying facts of Friday, April 24, 2021, with the intent that Julia Serpico be maliciously prosecuted for a crime she did not commit.

105. As outlined above, Defendant Christina Lowett acted with malice, particularly when she intentional lied to police concerning the factual events of Wednesday, April 22, 2020, who responded to her home following her husbands fabricated 911 call.

106. When Christina Lowett gave her false statement that Julia Serpico swerved her automobile at her son, she knew those allegations were false, yet she made them

---

[9] Obviously, there was additional evidence other than the surveillance video proving the Lowetts' allegations were untrue, including the eye-witness accounts of Julia and Emily Serpico. However, no investigation was ever performed by the Defendants, or any other member of the NCPD into Julia's complaint, corroborating Plaintiff's fear that the Nassau police Defendants refuse to provide her with police protection and services.

anyway. Christina Lowett did so with the intent to have Julia Serpico falsely arrested and maliciously prosecuted. Plaintiff was thereafter seized, and her personal liberty and privacy was infringed upon. Thereafter, Defendant Christina Lowett continued to act with malice when she intentional lied to prosecutors assigned to the criminal prosecution concerning the underlying facts of Wednesday April 22, 2021, with the intent that Julia Serpico be maliciously prosecuted for a crime she did not commit.

## CAUSES OF ACTION

### ONE
### 42 U.S.C. § 1983 – False Arrest

107.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-106 as though fully set forth herein.

108.  All Nassau Defendants intended to confine Julia Serpico when they arrested her and confined her at the 7th Precinct.

109.  Julia Serpico did not consent to the confinement and was confined against her will.

110.  Julia Serpico was conscious of the confinement.

111.  Defendants unlawfully confined Julia Serpico because they did not have probable cause to believe she committed a crime, and their confinement was without privilege or justification.

112.  Defendants therefore falsely arrested Julia Serpico in violation of the United States and New York State Constitutions and laws.

### TWO
### 43 U.S.C. § 1983 – False Arrest-Failure To Intervene

113.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-112 as though fully set forth herein.

114.  All Nassau Defendants intended to confine Julia Serpico when they arrested her and confined her at the 7th Precinct.

115.  Julia Serpico did not consent to the confinement and was confined against her will.

116.  Julia Serpico was conscious of the confinement.

117.  Defendants unlawfully confined Julia Serpico because they did not have probable cause to believe she committed a crime, and their confinement was without privilege or justification.

118. Defendants therefore falsely arrested Julia Serpico in violation of the United States and New York State Constitutions and laws.

119. Knowing that well settled constitutional rights of Plaintiff were about to be violated, Det. Clementson failed to intercede in Plaintiff's arrest, where a duty to intercede existed.

### THREE
### 42 . S.C. § 1983 – False Imprisonment

119. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-119 as though fully set forth herein.

120. All Nassau Defendants intended to confine Julia Serpico when they arrested her and held her at the 7th Precinct.

121. Julia Serpico did not consent to the confinement and was confined against her will.

122. Julia Serpico was conscious of the confinement.

123. Defendants unlawfully confined Julia Serpico because they did not have probable cause to believe she committed a crime, and their confinement was without privilege or justification.

124. Defendants therefore falsely imprisoned Julia Serpico in violation of the United States and New York State Constitutions and laws.

### FOUR
### 42 U.S.C. § 1983 – Malicious Prosecution

125. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-124 as though fully set forth herein.

126. All Nassau Defendants initiated a criminal proceeding against Julia Serpico when they arrested her and charged her with various crimes under case number CR-008364-20NA.

127. Defendants initiated a criminal proceeding against Julia Serpico despite the fact that no probable cause existed to believe Julia Serpico committed the charged crimes.

128. Defendants acted with malice, particularly where they had factual evidence rebutting probable cause, did not find the complainant credible, concluded Julia Serpico lacked the requisite criminal intent, and ignored evidence including the existence of surveillance video they knew existed and the eye-witness account of Emily Serpico which conclusively proved that Julia Serpico did not commit the crime of Endangering

the Welfare Of A Child: Injurious : 17 YOA or Reckless Endangerment 2nd brought against her.

129. The criminal proceedings against Julia Serpico were terminated in her favor on August 3, 2020.

130. Defendants therefore maliciously prosecuted Julia Serpico in violation of the United States and New York State Constitutions and laws.

## FIVE
### Pendent State Claim – Malicious Prosecution

131. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-130 as though fully set forth herein.

132. All Nassau Defendants initiated, and continued, criminal proceedings against Julia Serpico, and did so without probable cause.

133. Defendants acted maliciously, and for a purpose other than to bring Julia Serpico to justice.

134. Julia Serpico was arrested, arraigned, based upon the false charges Defendants filed against her, therefore she was seized, and her personal liberty and privacy was infringed upon.

135. All charges against Julia Serpico were dismissed on August 3, 2020, Accordingly, the criminal proceedings terminated in Julia Serpico's favor.

136. Defendants therefore maliciously prosecuted Julia Serpico, in violation of the New York State Constitution and laws.

## SIX
### Pendent State Claim – Respondent superior/vicarious liability

137. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-138 as though fully set forth herein.

138. Defendant Nassau County was, at all relevant times, the employer of Defendants Det. Dunbar and Clementson, Sgt. Horch, Officers Coleman, Bracco and John and Jane Does 1-10, as well as the additional police personnel whose conduct is at issue but whose identities are not yet known to Plaintiff but are known to Defendants.

139. Defendants Det. Dunbar and Clementson, Sgt. Horch, Officers Coleman, Bracco and John and Jane Does 1-10, and the additional NCPD employees whose conduct is at

issue, acted within the scope of their employment with Nassau County when they violated Julia Serpico's rights and committed the various torts against her, as outlined above.

140. As their employer, Nassau County is vicariously liable for their actions pursuant to the doctrine of respondent superior.

### SEVEN-Joseph Lowett
### Pendent State Claim – Malicious Prosecution

141. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-141 as though fully set forth herein.

142. Defendant, Joseph Lowett, initiated a criminal proceeding against Julia Serpico for which she was arrested and charged with various crimes under case number CR-008364-20NA.

143. Defendant, Joseph Lowett, initiated, and continued, criminal proceedings against Julia Serpico, and did so without probable cause.

144. Defendant, Joseph Lowett, acted maliciously, and for a purpose other than to bring Julia Serpico to justice.

145. Defendant, Joseph Lowett, acted malice particularly when he called 911 and intentionally lied to police concerning the factual events of Friday, April 24, 2020, as well as the follow up interviews of responding officers resulting in charges being filed against Plaintiff who was thereafter seized, and her personal liberty and privacy was infringed upon. Defendant, Joseph Lowett, continued to act with malice when he subsequently lied to prosecutors assigned to the criminal prosecution concerning the underlying facts up to the date of the dismissal.

146. All charges against Julia Serpico were dismissed on August 3, 2020, Accordingly, the criminal proceedings terminated in Julia Serpico's favor.

147. Defendant therefore maliciously prosecuted Julia Serpico, in violation of the New York State Constitution and laws.

### EIGHT-Christina Lowett
### Pendent State Claim – Malicious Prosecution

148. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-148 as though fully set forth herein.

149. Defendant, Christina Lowett, initiated a criminal proceeding against Julia Serpico for which she was arrested and charged with various crimes under case number CR-008364-20NA.

150. Defendant, Christina Lowett, initiated, and continued, criminal proceedings against Julia Serpico, and did so without probable cause.

151. Defendant, Christina Lowett, acted maliciously, and for a purpose other than to bring Julia Serpico to justice.

152. Defendant, Christina Lowett, acted malice particularly when she intentionally lied to police responding to her husband's 911 call, and thereafter lied in her supporting deposition concerning the factual events of Wednesday, April 24, 2020, resulting in charges being filed against Plaintiff who was thereafter seized, and her personal liberty and privacy was infringed upon. Defendant, Christina Lowett, continued to act with malice when she subsequently lied to prosecutors assigned to the criminal prosecution concerning the underlying facts up to the date of the dismissal.

153. All charges against Julia Serpico were dismissed on August 3, 2020, Accordingly, the criminal proceedings terminated in Julia Serpico's favor.

154. Defendant, therefore, maliciously prosecuted Julia Serpico, in violation of the New York State Constitution and laws.

**WHEREFORE**, Plaintiff requests the following relief jointly and severally as against all the defendants:

1. A trial by jury on all issues;

2. An award of compensatory damages in an amount to be determined at trial;

3. An award of punitive damages in an amount to be determined at trial;

4. Disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988; and

5. Such other and further relief as this Court may deem just and proper.

Dated: Mineola, New York
     May 19, 2021

           Respectfully submitted,

           The Law Office of Anthony M. Grandinette
           *Attorneys for Plaintiffs*
           114 Old Country Road, Suite 420
           Mineola, New York 11501
           (516) 877-2889

By:     <u>s/ Anthony Grandinette</u>
                      Anthony M. Grandinette, Esq.

Anthony M. Grandinette, Esq.